UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

LISA M. BECKMAN,                    )
                                    )
        Plaintiff,                  )           No. 6:25-CV-162-HAI
                                    )
v.                                  )
                                    )           MEMORANDUM OPINION
FRANK J. BISIGNANO,                 )               & ORDER
*Commissioner of Social Security*,  )
                                    )
        Defendant.                  )
                                    )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In December 2022, claimant Lisa M. Beckman filed a protective application for supplemental security income. D.E. 9-1 at 23.[1] She alleged disability beginning March 1, 2022, but that was later amended to December 12, 2022. The Social Security Administration denied her claims initially and upon reconsideration. Then, on July 11, 2024, Administrative Law Judge ("ALJ") Jerry Lovitt conducted a telephonic administrative hearing. The ALJ heard testimony from Beckman (represented by attorney Lauren Zwirlein and at the hearing by attorney Kyle Buss) and impartial vocational expert ("VE") James Adams. *Id*. Beckman was found to not be disabled during the relevant period, December 12, 2022, to July 22, 2024, the date of the decision. *Id*. at 40. Beckman obtained a previous unfavorable ALJ decision on October 27, 2021 (*id*. at 23), but the latter ALJ found that the record contained new and material evidence that warranted altering the prior findings.

Beckman brought this action under 42 U.S.C. §§ 405(g) and 1383(c) on September 28, 2025, to obtain judicial review. D.E. 1. The parties consented to the referral of this matter to a

---

[1] References to the administrative record are to the large black page numbers at the bottom of each page.

1

magistrate judge. D.E. 13. Accordingly, this matter was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. After the record was filed (D.E. 9-1), the parties submitted briefs (D.E. 10, 12, 14). The Court, having reviewed the record and for the reasons stated herein, **DENIES** Beckman's request for relief.

## I. The ALJ's Decision

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate a disability claim. The ALJ followed these procedures in this case. *See* D.E. 9-1 at 23-40.

At the first step, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). In this case, the ALJ found that Beckman "has not engaged in substantial gainful activity since December 12, 2022, the application date (20 CFR 416.971 et seq.)." D.E. 9-1 at 26.

At the second step, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). The ALJ found that Beckman has the following severe impairments: "obesity; asthma; degenerative disc disease; degenerative joint disease; borderline intellectual functioning; attention deficit hyperactivity disorder; and depressive disorder (20 CFR 416.920(c))." D.E. 9-1 at 26. Beckman does not argue the ALJ should have identified additional severe impairments.

At the third step, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then she is disabled. 20 C.F.R. § 404.1520(d). The ALJ found Beckman failed to meet this standard. D.E. 9-1 at 27. The ALJ considered several listings

but found none of them satisfied in Beckman's case. *Id*. Relevant to this appeal, the ALJ made the following comment concerning Beckman's musculoskeletal impairments:

> With regard to the claimant's musculoskeletal impairments, listings 1.15, 1.16, and 1.18 are not met because the record does not contain evidence of a documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands. Nor does the record indicate that the claimant has an inability to use one or both upper extremities to independently initiate, sustain, and complete work-related activities involving fine and gross movements.

D.E. 9-1 at 28. Beckman does not appear to challenge the ALJ's step-three determination. Her briefing nowhere addresses the elements of these or any other listed impairments.

If, as here, a claimant is found non-disabled at step three, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is her ability to do physical and mental work activities on a sustained basis despite limitations from the impairments. The ALJ found, as relevant to this appeal, that Beckman had the RFC "to perform light work as defined in 20 CFR 416.967(b) except occasional climbing of ramps/stairs; occasional balancing; occasional stooping; no crouching, kneeling or crawling; no climbing of ladders, ropes, or scaffolds; [and] no exposure to unprotected heights. . . ." D.E. 9-1 at 30.

Beckman objects the ALJ's RFC finding. Her specific argument is that the ALJ should have limited her to, at most, sedentary work. She says this error resulted from the ALJ finding unpersuasive the functional-limitations report of Beckman's healthcare provider Michael Partin, APRN. Had the ALJ properly found Partin's report persuasive, she argues, he would have found that "she is incapable of being on her feet up to two-thirds of a workday." D.E. 10 at 10; D.E. 14 at 3.

At the fourth step, if a claimant's impairments do not prevent her from doing past relevant work (given the ALJ's assessment of her residual functional capacity), she is not

disabled. 20 C.F.R. § 404.1520(f). The ALJ found that Beckman "has no past relevant work (20 CFR 416.965)." D.E. 9-1 at 38.

At the fifth step, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from doing other work that exists in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g). The ALJ found Beckman was not disabled at this step. D.E. 9-1 at 39-40. Based on the VE's testimony, the ALJ found Beckman could perform work such as garment sorter and laundry classifier, for which significant numbers of jobs exist in the national economy. *Id*. at 39.

Accordingly, on July 22, 2024, the ALJ issued an unfavorable decision, finding that Beckman was not disabled. The Appeals Council denied review on July 7, 2025. *Id*. at 1.

## II. Framework for Judicial Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Mullen*, 800 F.2d at 545 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Under the current rules, all medical opinions are weighed in light of several factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors. 20 C.F.R. § 416.920c(c). Supportability and consistency "are the most important factors" in weighing medical opinions. *Id*. § 416.920c(b)(2).

Concerning the burden of proof:

> Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry . . . the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

Finally, issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. *United States v. Kerns*, 9 F.4th 342, 351 (6th Cir. 2021); *Strickland v. City of Detroit*, 995 F.3d 495, 511 (6th Cir. 2021). Here, Beckman presents a single argument related to the ALJ's treatment of Nurse Partin's report.

### III. Analysis

Beckman's appeal focuses on Mr. Partin's report and its consistency with the remainder of the record. The Report and accompanying materials constitute Exhibits B5F and B6F, found at pages 552-561 of the Record. Beckman argues the RFC should have more closely tracked Partin's report.

The RFC determination is the ALJ's ultimate determination of what a claimant can still do despite her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c). The ALJ makes this finding based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a)(3), 416.946(c). Thus, in making the RFC determination, the ALJ must evaluate the persuasiveness of the medical source statements in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a), 416.920c, 416.929(a).

The first page of Exhibit B5F is a letter dated December 19, 2022, from Tabak Law LLC to Beckman. The letter explains that "a RFC (Residual Functional Capacity) form" is included, for Beckam to take to her doctor. D.E. 9-1 at 552. The next five pages consist of that RFC form, as filled-out by Nurse Partin.

On the form, Partin identifies three contacts with Beckman: a fifteen-minute contact in September 2021, a fifteen-minute contact on January 5, 2023, and, finally, a one-hour contact on January 6, 2023, which is the date Partin completed the form. D.E. 9-1 at 553. Beckman explains the form's findings as follows:

> Mr. Partin opined that, in an 8-hour workday, Plaintiff can sit for 1 hour at a time, stand for 30 minutes at a time, sit for at least 6 hours total, and stand/walk for 4 hours total. Tr. 554-555. Mr. Partin determined that Plaintiff will need to shift positions at will from standing, sitting, and walking, and will need unscheduled

breaks during an 8-hour workday. Tr. 555. He opined that Plaintiff can occasionally lift/carry less than 10 pounds and never lift/carry anything beyond that weight. *Id*. Mr. Partin stated that Plaintiff can frequently look down, look up, and hold her head in a static position. Tr. 556. He found that she can occasionally twist, rarely crouch/squat, and climb stairs, and never stoop or climb ladders. *Id*. Mr. Partin opined that, due to Plaintiff's impairments, she will likely be absent from work more than 4 days per month. *Id*. He based his assessment on the following clinical findings and objective signs: low back and hip pain; sciatica bilaterally; chronic fatigue; fatigue on exertion; slow gait; occasional use of a roller; and pain with standing and sitting. Tr. 553.

D.E. 10 at 4-5.

The form is followed by Nurse Partin's encounter notes. D.E. 9-1 at 558-561. The notes begin with the "Subjective" component, which states:

> **Chief Complaint: Paperwork Completed**
> **History of Present Illness - Paperwork Completed**
>
> **Context**
>
> **Reported:** Patient is here today to have paperwork completed for Disability. Patient has Restricted Lung Disease, PTSD, anxiety, depression, adult learning disorder, shortness of breath on exertion, chronic fatigue, low back pain, bilateral hip pain, and bilateral sciatica, Went over form with patient, compared with previous records brought into office by patient today.

D.E. 9-1 at 558. The notes indicate that Beckman can independently dress, feed, toilet, transfer herself, make phone calls, shop, prepare meals, maintain the house, do laundry, and use public transportation. But "This patient ambulates with an assistive device." *Id*. at 558-59. Concerning musculoskeletal issues, the notes say, "The gait is slow, patient without walker today but uses when needed." *Id*. at 560.

Thus, Nurse Partin only had two fifteen-minute encounters with Beckman prior to the visit where Partin completed the "paperwork for Disability," which he "went over with [Beckman]." The accompanying notes state that Beckman "ambulates with an assistive device," but she did not have the walker during her visit. She only uses it "when needed."

7

Here is what the ALJ said about Partin's functional-limitations statements:

Nurse Partin opined that the claimant has considerable physical functional limitations related to her impairments including sitting for only one hour at a time with a total of six hours of sitting in an eight-hour day; standing or walking no more than 30 minutes at a time with a total of four hours of standing or walking in an eight-hour day; the ability to change positions at will and take unexpected breaks eight times per workday; and must be able to use an assistive device for ambulation. (Ex B5F). The undersigned is not persuaded by Nurse Partin's opinion as it is not adequately supported and appears to rely primarily on the claimant's self-reported symptoms. (Ex. B5F). For example, the form indicates that Nurse Partin has only treated the claimant on three occasions and treatment records show that one of those occasions was an appointment at which he completed the form with the claimant. (Ex. B6F, pp. 1-4). Additionally, Nurse Partin's opinion consists of a series of checked boxes on a form and a list of the claimant's diagnoses and symptoms without supporting objective medical evidence. (Ex B5F). Further, the degree of limitation opined is not consistent with the evidence of record, including, for example, treatment records from all other providers who do not indicate any abnormalities in the claimant's gait or that she ambulates with an assistive device. (Exhibits B8F, p. 2; B9F, pp. 4-5; B10F, p. 3, for example).

The undersigned has not given consideration to the portions of Nurse Partin's opinion regarding conclusions that are an issue reserved for the Commissioner. (Exhibit B5F).

D.E. 9-1 at 34-35.

Accordingly, the ALJ found that Partin's opinion was "not adequately supported," the functional statements were "without supporting objective medical evidence," and the degree of limitations was "not consistent with the evidence of record" when other providers did not observe gait abnormalities or believe Beckman used a walker. D.E. 9-1 at 34-35. Accordingly, the Court at the outset rejects any argument that the ALJ failed to address the supportability and consistency factors in discussing the persuasiveness of Nurse Partin's functional assessments. The ALJ also expressed skepticism of the Report because it was a check-mark form that Partin

8

filled out "with [the] patient, compared with previous records brought into office by patient today."[2]

Concerning supportability, Beckman argues that Partin's functional report and the visit notes include observations and diagnoses that constitute objective evidence in support of Partin's opinions. D.E. 10 at 8. On the form, "Partin supported his opined limitations based on the following clinical findings and objective signs: low back and hip pain; sciatica bilaterally; chronic fatigue; fatigue on exertion; slow gait; occasional use of a roller; and pain with standing and sitting. Tr. 553." *Id*. Among these, low back pain, hip pain, pain with standing and sitting, fatigue, and use of a roller appear to be self-reported phenomena. Slow gait is an objective observation, but it is an observation absent from most of the medical reports in the record. Sciatica is an objective diagnosis, but the ALJ's RFC (*see id*. at 30) "specifically limit[s Beckman's] postural activities due to the back, arthritic and obesity impairments[.]" *Id*. at 37.

Beckman also argues that Partin's opinion is consistent with that of consultive examiner Marguerite Root, APRN. D.E. 10 at 8-9. Ms. Root examined Beckman in September 2023, and her report is Exhibit B9F, at pages 580-84. The "opinion" section of this report states,

> Based on the objective evidence, the claimant may have difficulty with prolonged walking, sitting, standing, and climbing ladders or stairs. Her ability to squat appears to be compromised, especially on a repetitive basis. She may have difficulty with repetitive bending over or twisting at the waist. She may have difficulty with lifting and carrying heavy weights, but light weights should not be a problem. She may have difficulty with tolerating exertional activities. She was

---

[2] "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Hernandez v. Comm'r of Soc. Sec*., 644 F. App'x 468, 474 (6th Cir. 2016) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir.1993)). "Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's 'check-off form' of functional limitations that 'did not cite clinical test results, observations, or other objective findings[.]'" *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566-67 (6th Cir. 2016) (quoting *Teague v. Astrue,* 638 F.3d 611, 616 (8th Cir. 2011)); *see also Smith v. Comm'r of Soc. Sec.,* No. 13-12759, 2015 WL 899207 at *14-15 (E.D. Mich. Mar. 3, 2015) (collecting cases); *Ashley v. Comm'r of Soc. Sec.,* No. 1:12-cv-1287, 2014 WL 1052357, at *8 n. 6 (W.D. Mich. Mar. 19, 2014) (collecting cases). Checklist opinions "are not *per se* unreliable," but the ALJ may consider "the format of a medical opinion . . . in light of other factors in the record that signal unreliability." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 630 (6th Cir. 2016).

able to ascend and descend the exam table and move around the exam room without difficulty. . . . She is able to ambulate without the use of an assistive device.

Aside from the above noted restrictions, the claimant appears functionally intact.

D.E. 9-1 at 583-84.

The ALJ found Nurse Root's opinion "marginally persuasive." D.E. 9-1 at 34. While parts of the opinion were supported by Root's exam findings, the ALJ found

her opinion regarding prolonged standing, walking, and sitting is not well supported by her [own] examination which notes that the claimant has normal gait and station without the use of an assistive device; has full 5/5 muscle strength; intact sensation; and was able to ascend and descend the exam table, as well as move around the exam room without difficulty.

*Id*. The ALJ also found this portion of Root's opinion inconsistent with other evidence in the record: "Specifically, as discussed above, the claimant is able to ambulate without an assistive device and her impairments have been treated conservatively with medication throughout the period at issue. (Exhibits B2F, pp. 1-2; B8F, pp. 3, 6-8; B11F, pp. 2-6, for example)." *Id*.

So, the ALJ addressed supportability and consistency regarding Root's opinion, and rejected precisely the portion of Root's opinion that Beckman relies upon to support Partin's opinion. In conducting these analyses, the ALJ found that, in the majority of the record,

no abnormalities are noted in the claimant's gait and there are no records which show that she is using an assistive device for ambulation at the time she presented for medical treatment. Notably, in July 2023, the claimant reported to her provider that she had walked to the clinic for her appointment that day and at the hearing, the claimant testified that the distance she had to walk was approximately one mile. (Exhibit B8F, p. 2; Hearing Testimony). Additionally, during the September 2023 consultative examination, the claimant was noted to ambulate without an assistive device, have a normal gait, and was able to ascend and descend the exam table, as well as move around the exam room without difficulty. (Exhibit B9F, pp. 4-5).

D.E. 9-1 at 32.

Granted, another decisionmaker could have reached different conclusions. But, as to the ALJ findings discussed herein, the Court locates no legal error. And the Court does not find the ALJ's resolution of these issues to be so outside the zone of reasonable choice as to be unsupported by substantial evidence. The ALJ wrote a thorough opinion examining the entirety of the record. The ALJ discussed the supportability and consistency-with-the-record of the functional opinions of Partin and Root. Given the lenient standard of review, the ALJ's opinion is not reversible on the grounds argued by Beckman. The record is not so one-sided that it demands a finding that Beckman is limited to, at most, sedentary work.

### IV. CONCLUSION

The Court being sufficiently advised, **IT IS HEREBY ORDERED** as follows:

(1)   Plaintiff's request to remand (D.E. 10) is **DENIED**.

(2)   **JUDGMENT** will be entered in favor of the Commissioner by separate contemporaneous order.

This the 24th day of April, 2026.

Signed By:

_Hanly A. Ingram_

**United States Magistrate Judge**